UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kenneth Daywitt, et al.,

                    Plaintiffs,                    Court File No. 17-cv-1720 (WMW/LIB)

        v.

                                                   **REPORT AND RECOMMENDATION**

Moser, et al.,

                    Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an Order of referral from the Honorable Wilhelmina M. Wright, [Docket No. 27], made in accordance with the provisions of 28 U.S.C. § 636(b)(1), and upon Defendants' Motion to Dismiss. [Docket No. 18]. On February 27, 2019, the Court established a briefing schedule for Defendants' Motion to Dismiss. (Order [Docket No. 26]). In accordance with the briefing schedule, on April 4, 2019, the Court took Defendants' Motion under advisement on the parties' written submissions. (Id.).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 18], be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND AND STATEMENT OF FACTS[1]

Kenneth Daywitt and William De'Angelo Kinnard, (hereinafter "Plaintiffs"), are civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Compl., [Docket No. 1], at 2). Plaintiffs reside at MSOP's Moose Lake facility. (Id.). Generally, Plaintiffs bring their claims

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiffs. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

pursuant to 42 U.S.C. § 1983 alleging that Defendants have denied them nutritionally adequate kosher and vegan food in violation of the First and Fourteenth Amendments, as well as, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Minnesota Constitution, and Minnesota Rule 4665.2900. (Id. at 17).

Plaintiff Daywitt practices Judaism and Plaintiff Kinnard practices Rastafarianism. (Id. at 11). Plaintiffs allege that their religious beliefs require them to adhere to kosher and vegan diets. (Id. at 12). Plaintiffs further allege that the MSOP Moose Lake Facility serves an inadequate variety of kosher and vegan food, as well as, an inadequate amount of kosher food, which they contend limits their ability to properly practice their religion. (Id. at 13).

With regard to the kosher food served at the Moose Lake Facility, Plaintiffs allege that the kosher meals are "not up to the standards of the American Dietetic Association for adult males, nor are they comparable to the daily portions served to MSOP patients who are not receiving kosher meals." (Id.). Specifically, Plaintiffs allege that the kosher meals provide less than between 1700 and 1800 calories per day. (Id.). Additionally, Plaintiffs allege that in the past, Defendants have served kosher and non-kosher foods together, thereby contaminating the kosher food, including during Passover in 2017. (Id.). Plaintiffs further allege that they have repeatedly brought the issues with the service of the kosher food to the attention of Defendants and provided Defendants with potential alternatives, but Defendants have not acted on their suggestions. (Id. at 14). According to Plaintiffs, there were once between eight and ten people who received kosher meals but due to the poor quality and quantity of the kosher meals, all but two people have stopped eating the kosher meals. (Id. at 15). Lastly, Plaintiffs allege that the variety of kosher food available to them is limited compared to the regular meals served to other inmates. (Id.).

With regard to the vegan food served at the Moose Lake Facility, Plaintiffs allege that Moose Lake Facility only serves them a limited amount of vegan food which includes cheese sandwiches, black bean burgers, and veggie burgers that are served in different forms. (Id. at 10, 13). Plaintiffs also allege that Plaintiff Kinnard was unknowingly served chicken gravy which resulted in him having an upset stomach. (Id.). Plaintiffs also allege that they have requested they be served soy milk but that their requests were denied. (Id. at 11). Lastly, Plaintiffs allege that for the "past few weeks" prior to filing their Complaint, the Moose Lake Facility has served Plaintiff Kinnard his vegan meal 20 to 30 minutes after everyone else, which has happened "on average two times per week." (Id. at 16).

On the basis of these factual allegations, liberally construing the pro se Complaint, Plaintiffs asserts claims against Defendants in both their individual and official capacities for violations of the Minnesota Constitution; Minnesota Rule 4665.2900; the First Amendment and the Fourteenth Amendment of the United States Constitution; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–1; and 42 U.S.C. 2000e. As relief, Plaintiffs request Defendants be enjoined from engaging in the same or similar practices as alleged, that the Court order Defendants to provide adequate kosher and vegan meals, and that the Court award Plaintiffs monetary damages. (Id. at 24–25).

## II.    DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 18].

Defendants move the Court for an Order dismissing Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and/or for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss [Docket No. 18]).

### A.  Standard of Review

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of facts, which, if proven true, would entitle the plaintiff to legal redress against the named defendants under an established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). In short, "the complaint must allege facts, which if true, state a claim as a matter of law." Id. When deciding a Rule 12(b)(6) motion to dismiss, a court generally may not consider materials outside the pleadings and assumes all facts alleged in the complaint are true, construing all reasonable inferences from those facts in the light most favorable to the complainant. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008); Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading." Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004). Likewise, while pro se complaints "are to be held to less stringent standards than formal pleadings drafted by lawyers, a district court should not assume the role of advocate for the pro se litigant, nor may a district court rewrite a [complaint] to include claims that were never presented." Semler v. Ludeman, No. 09–cv–0732 (ADM/SRN), 2010 WL 145275, at *5 (D. Minn. Jan. 8,

2010) (internal quotation marks and citations omitted). Furthermore, "[p]ro se litigants are not excused from complying with court orders or substantive and procedural law." <u>Farnsworth v. City of Kansas City, Mo.</u>, 863 F.2d 33, 34 (8th Cir. 1988) (citing <u>Burgs v. Sissel</u>, 745 F.2d 526, 528 (8th Cir. 1984)).

Defendants also cite Federal Rule 12(b)(1) as a basis for their Motion to Dismiss. (Defs.' Opp., [Docket No. 20], at 1). Rule 12(b)(1) states that a party may move to dismiss a claim for lack of subject matter jurisdiction. Defendants' arguments regarding the applicability of Eleventh Amendment immunity implicates the Court's subject matter jurisdiction over certain claims, and it is a challenge to the Complaint based on the face of the complaint, rather than the truthfulness of any allegations therein. "In a facial challenge to jurisdiction, such as the one before this Court, review is restricted to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." <u>Beaulieu v. Ludeman</u>, No. 07–cv–1535 (JMR/JSM), 2008 WL 2498241, at *5 (D. Minn. June 18, 2008).

**B.  Analysis**

**1.  Sovereign Immunity**

Based on the Eleventh Amendment, Defendants argue that any federal claims for damages brought against them in their official capacities should be dismissed, as the Court lacks subject matter jurisdiction over such federal claims. (Defs.' Mem. in Supp., [Docket No. 20], at 16–17). The Court agrees.

A suit against a public employee in that person's official capacity is merely a suit against the public employer. <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)). "The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has

abrogated that immunity for a particular federal cause of action." Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997). "To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so." Faibisch v. University of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002) (citing Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238–40 (1985)).

Here, Plaintiffs have not established that Minnesota has waived its immunity from damages for any of the laws at issue in this case, nor have they established that Congress abrogated Minnesota's immunity with respect to any of the federal claims at issue. See, Van Wyhe v. Reisch, 581 F.3d 639, 655 (8th Cir. 2009) (official capacity claims for damages not available under RLUIPA); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) (Section 1983 claims for damages against individual defendants in their official capacities are barred by Eleventh Amendment). As such, to the extent that Plaintiffs seek monetary damages from Defendants in their official capacities under federal law, such claims should be dismissed.

Furthermore, the Minnesota government and its officials are also immune from punitive damages because "considerations of history and policy do not support exposing a [State] to punitive damages for the bad-faith actions of its officials." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

Therefore, Plaintiffs will not be able to recover any monetary relief (whether compensatory or punitive in nature) from the individual named Defendants based on any of the claims alleged against them in their official capacities. Accordingly, this Court recommends dismissing with prejudice for lack of subject matter jurisdiction all of Plaintiffs' official-capacity claims against the individually named Defendants which seek to recover monetary damages.[2]

---

[2] The Court notes that Plaintiffs also seek compensatory monetary relief pursuant to 42 U.S.C. § 2000e, the Civil Rights Act, which provides in part that "[i]t shall be unlawful employment practice for an employer . . . to discriminate

### 2.  **Plaintiffs' State Law Claims**

Plaintiffs also assert claims under Article 1, Sections 2 and 16 of the Minnesota Constitution, as well as, Minnesota Rule 4665.2900. (Compl., [Docket No. 1], at 20–21). Defendants argue that Plaintiffs' state law claims must be dismissed because claims under the Minnesota Constitution and violations of state rules are not privately actionable. (Defs.' Mem. in Supp., [Docket No. 20], at 19–22).

### i.  **Official Capacity – Monetary Damages**

As an initial matter, the Court concludes that any state law claim against Defendants in their official capacities must also be dismissed for lack of subject matter jurisdiction. As noted above, the Eleventh Amendment bars a suit in federal court for money damages brought against a state official in his or her official capacity. Beaulieu, 2008 WL 2498241, at *7. Although "the Supreme Court has long recognized an exception to Eleventh Amendment immunity permitting suits in federal court against state officials alleged to have violated federal law, at least where the relief sought is only injunctive," this "exception does not extend to allow such suits based on pendent state-law claims even if the relief sought is limited to prospective injunctive relief." Minn. Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (emphasis added).

Therefore, the Court recommends dismissal with prejudice of all state law claims against Defendants in their official capacities, regardless of the relief Plaintiffs seek.

---

against any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2. Even if this Court had not recommended dismissal of all of Plaintiffs' claims seeking monetary relief, the Court would also recommend Plaintiffs' claim pursuant to the Civil Rights Act be dismissed because it cannot be a basis for relief for Plaintiffs because they are not employees or employee candidates of the MSOP, and therefore, the Civil Rights Act plainly does not apply to the present case.

ii.     **Minnesota Rule 4665.2900**

To the extent Plaintiffs assert individual capacity claims based on Minnesota Rule 4665.2900, the Court recommends that this claim too be dismissed because this rule does not provide a private right of action. "In Minnesota, a rule adopted by an administrative agency has the force of law. Minn. Stat. § 14.38. A Minnesota law, however, does not give rise to a civil cause of action unless the language of the [law] is explicit or it can be determined by clear implication." Nelson v. Williams, No. 13-cv-181 (PJS/LIB), 2014 WL 5464159, at *4 (D. Minn. Oct. 27, 2014) (alteration in original) (internal quotation marks omitted). To determine "whether a Minnesota law implicitly authorizes a private cause of action, Minnesota courts 'consider three factors: (1) whether the [plaintiffs] belong to a special class of persons for whose benefit the statute was enacted, (2) whether the legislature indicated an intent to create or deny a private remedy, and (3) whether inferring a private remedy would be consistent with the underlying purpose of the legislation.'" Id. at *5 (alteration in original) (quoting All. for Metro. Stability v. Metro. Council, 671 N.W.2d 905, 916 (Minn. Ct. App. 2003)).

Minnesota Rule 4665.2900 articulates the quality and variety of food to be served at residential facilities licensed by the Department of Health. The rule states that at such a facility, "[f]oods and beverages shall be palatable, of adequate quantity and variety, attractively served at appropriate temperatures and prepared by methods which conserve nutritional value. It is recommended that dishes be used rather than compartment trays. Food services shall recognize and provide for the physiological, cultural, emotional, and developmental needs of each resident. All meals provided shall be planned, prepared, and served by persons who have received instruction in food-handling techniques and practices." Minn. R. 4665.2900. Nothing in the rule explicitly provides for a private right of action and, considering the relevant factors, the Court

cannot conclude that a private right of action is clearly implied. Minnesota Rule 4665.2900 is part of a broader regulatory system setting forth minimum standards for the "operation of supervising living facilities insofar as they relate to . . . the health, treatment, comfort, safety, and well-being of the persons accommodated for care," and Plaintiffs, therefore, arguably belong to the class of persons for whose benefit the rules were promulgated. See, Minn. R. 4665.0200, subpt. 1; See also, Bishop v. Jesson, No. 14-cv-1898 (ADM/SER), 2016 WL 8674584, at *7 (D. Minn. Feb. 12, 2016), report and recommendation adopted, No. 14-cv-1898 (ADM/SER), 2016 WL 906422 (D. Minn. Mar. 9, 2016) (finding Minnesota Rules contained in Minn. R. 4665.0200 to be a part of the regulatory system for the operation of supervised living facilities in Minnesota).

However, instead of creating a private remedy for residents at its facilities, the Court finds that Minnesota Rule 4665.2900 is part of a regulatory system that addresses licensure requirements for those supervised facilities. Id. (finding same); See, e.g., Minn. R. 4665.0300 ("A license shall be issued by the commissioner of health to an applicant who satisfactorily meets all requirements contained in these regulations."). Failure to comply with the minimum requirements is addressed by the imposition of monetary fines and increased fines after failure to remedy a previously noticed violation. See, Minn. R. 4665.9030 (establishing fine of $350 for violation of Rule 4665.3000), 4665.9100 ("If, upon subsequent reinspection after a fine has been imposed under parts 4665.9000 to 4665.9090, the deficiency has still not been corrected, another fine shall be assessed. This fine shall be double the amount of the previous fine."). In this context, there is no clear implication that a private cause of action was created by Minnesota Rule 4995.2900. Plaintiffs' argument that Minnesota Rule 4995.2900 clearly requires certain food service/dietary standards are unavailing; what must be clearly implied is not the substantive standards of the regulation but a private right

of action based on the failure to comply with those standards. No such clear implication is found here.

Therefore, the Court recommends that all claims based on Minnesota Rule 4995.2900 be dismissed with prejudice. See, Bishop, 2016 WL 8674584, at *7 (D. Minn. Feb. 12, 2016) (finding that no private cause of action exists under Minnesota Rule 4995.3000).

### iii.    Minnesota Constitution

Finally, the Court addresses Plaintiffs' claims against Defendants in their individual capacities based on the Minnesota Constitution. Plaintiffs rely on Article 1, Sections 2 and 16 of the Minnesota Constitution. (Compl., [Docket No. 1], at 20–21). Defendants broadly argue that Plaintiffs' claim under the Minnesota Constitution must be dismissed because they are not privately actionable. (Defs.' Mem. in Supp., [Docket No. 20], at 20).

Generally, "there is no private cause of action for violations of the Minnesota Constitution." Guite v. Wright, 976 F. Supp. 866, 871 (D. Minn. 1997), aff'd on other grounds, 147 F.3d 747 (8th Cir. 1998); See also, Mlnarik v. City of Minnetrista, No. A09–910, 2010 WL 346402 at *1 (Minn. App. Feb. 2, 2010)  (explaining "no private cause of action for a violation of the Minnesota constitution has yet been recognized" and "[t]herefore appellant's complaint fails to state a claim"); Danforth v. Eling, 2010 WL 4068791 at *6 (Minn. App. Oct. 19, 2010) (noting "there is no private cause of action for violations of the Minnesota Constitution" and the plaintiff's claims were properly dismissed as frivolous).

Article 1, Section 2 of the Minnesota Constitution provides that "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. Art. I, § 2. However, courts have consistently found that no private cause of action exists under Article 1, Section 2 of

the Minnesota Constitution. See, e.g., State v. Beecroft, 813 N.W.2d 814, 837 (Minn. 2012);

Danforth v. Eling, No. A10-130, 2010 WL 4068791, at *6 (Minn. Ct. App. Oct. 19, 2010) (holding

that there is no private cause of action under Article 1, Section 2 of the Minnesota Constitution).

Accordingly, the Court recommends that all claims brought by Plaintiffs pursuant to Article

1, Section 2 of the Minnesota Constitution be dismissed with prejudice.

Unlike Article 1, Section 2 of the Minnesota Constitution, however, the Minnesota

Supreme Court recognized in Hill–Murray Federation of Teachers v. Hill–Murray High Sch., 487

N.W.2d 857, 865 (Minn. 1992), that a plaintiff can assert a private cause of action under Article

1, Section 16 of the Minnesota Constitution. Several courts have likewise consistently held that a

plaintiff can assert a private cause of action under Article 1, Section 16 of the Minnesota

Constitution. See, Brooks v. Roy, 881 F. Supp. 2d 1034, 1053 n. 12 (D. Minn. 2012) ("While

defendants claimed that the Minnesota Constitution does not provide for a private remedy,

Minnesota case law suggests otherwise as it relates to Article 1, § 16."); Am. Civil Liberties Union

of Minn. v. Tarek ibn Ziyad Acad., 788 F. Supp. 2d 950, 957 (D. Minn. 2011) (concluding that

"private parties have the right to assert challenges under the Minnesota Establishment Clause,"

which is contained within Article 1, Section 16 of the Minnesota Constitution); See, e.g., Jihad v.

Fabian, 680 F. Supp. 2d 1021, 1043 (D. Minn. 2010) ("In a test which mirrors the RLUIPA

standard, the Minnesota Supreme Court has held that the clause prohibits the State Government

from placing excessive burdens on sincerely-held religious beliefs, without a compelling

justification, and use of the least restrictive means. For the reasons . . . detailed in [their] discussion

of [a] Plaintiff's RLUIPA claims, [those] claims most likely fail under the Minnesota Constitution,

for lack of a substantial burden, or because of the overriding compelling State interests. Therefore,

[that] Plaintiff has shown neither a likelihood of success on the merits, nor irreparable harm in relation to his claims under the Minnesota Constitution.") (internal citations omitted).

The balancing test to determine if a state action infringes on a claimant's freedom of expression is as follows: "The courts ask if (a) the objector's belief is sincerely held; (b) the state regulation burdens the free exercise of religious beliefs; (c) the state interest in the regulation is compelling; and (d) the state regulation uses the least restrictive means to effectuate a compelling interest." Rooney v. Rooney, 669 N.W.2d 362, 369 (Minn. Ct. App. 2003), rev. denied (Minn. Nov 25, 2003), cert. denied 541 U.S. 1011 (2004) (citing Hill–Murray Fed'n of Teachers, 487 N.W.2d at 865).

Thus, Defendants' blanket assertion that no private right of action exists under the Minnesota Constitution is unpersuasive. Additionally, Defendants do not engage in any analysis regarding the specific state constitutional provisions at issue in Plaintiffs' Complaint, nor does Defendants' cited authority specifically address whether a private right of action exists under the constitutional provisions cited by Plaintiffs.

While Defendants do not make an argument regarding the balancing test under Article 1, Section 16 of the Minnesota Constitution, Plaintiffs' Complaint, on its face, demonstrates that Plaintiffs have asserted sufficient facts to make a plausible claim under Article 1, Section 16 of the Minnesota Constitution with regard to the caloric quantity of kosher food. Specifically, Plaintiffs allege in their Complaint that they have sincerely held religious beliefs and that those beliefs are being infringed on by Defendants' kosher food policies because there is an insufficient caloric quantity of kosher food. Thus, while the Court cannot presently determine Minnesota's state interest in their regulation of kosher food or whether that regulation is the least restrictive

means to effectuate that interest, Plaintiffs have alleged sufficient facts to render their claim under the Minnesota Constitution (Article 1, Section 16) facially plausible.

Therefore, the Court recommends denying the Motion to Dismiss to the extent Defendants argue that Plaintiffs' claims (for injunctive relief) regarding the caloric quantity of kosher food under the Minnesota Constitution (Article 1, Section 16) must be dismissed because they are not privately actionable.[3]

To the extent that Plaintiffs argue that the lack of variety of vegan and kosher food constitutes a substantial burden on their ability to practice their religion in violation of Article 1, Section 16 of the Minnesota Constitution, their argument is unpersuasive.

In Slater v. Teague, 2018 WL 1800919, at *6 (D. Colo. Mar. 21, 2018), the plaintiff argued that the lack of variety of kosher meals available to him violated his constitutional rights because it substantially burdened his religious practices due to this perceived lack of variety. Specifically, the plaintiff complained that there were only seven different kosher meals available to him. Id. at *2. The Court, however, found that the plaintiff's allegations that there was a lack of variety of kosher foods did not amount to a substantial burden and thus dismissed the plaintiff's constitutional claim. Id. at *6.

Plaintiffs in the present case similarly allege that their right to freely exercise their religion is substantially burdened by their perceived lack of variety of vegan and kosher food options. Their argument, however, fails to show that there is a substantial burden on their religious practices. See, e.g., Strope v. Cummings, 381 F. App'x 878, 881 (10th Cir. 2010) (finding that plaintiff's allegation that kosher meals had less variety than regular meals did not "constitute[ ] a substantial

---

[3] The Court notes that Plaintiffs' claim that Defendants' kosher food policies violate Article 1, Section 16 of the Minnesota Constitution will be allowed to proceed solely to the extent Plaintiffs seek injunctive relief. Plaintiffs have not cited any authority, and this Court finds none, where a court has allowed a plaintiff to seek monetary damages under Article 1, Section 16 of the Minnesota Constitution.

burden on [plaintiff's] practice of maintaining a kosher diet"); <u>Pleasant-Bey v. Tenn. Dep't of</u> <u>Corr.</u>, No. 18-5424, 2019 U.S. App. LEXIS 10099, at *8–9 (6th Cir. Apr. 4, 2019) (holding that an inmate's complaints about the lack of variety  in foods available on the halal menu failed to demonstrate a substantial burden of the exercise of the inmate's Muslim religion).

Accordingly, to the extent that Plaintiffs argue that the perceived lack of variety of vegan and kosher food options violates their rights under Article 1, Section 16 of the Minnesota Constitution, the Court recommends their claims be dismissed without prejudice.

Furthermore, with regard to vegan food, Plaintiffs have also failed to sufficiently plead facts demonstrating that their sincerely held religious beliefs are being substantially burdened by Defendants' vegan food policies. In their Complaint, Plaintiffs allege simply that there is a "lack of variety" with regard to the vegan meals provided. (Compl., [Docket No. 1], at 14). Plaintiffs also allege that the vegan food in prison was "better" than the vegan food at the MSOP Moose Lake facility. (<u>Id.</u> at 15). Lastly, Plaintiffs allege that "for the past few weeks [they have] had issues with the kitchen not preparing [their] meals" in a timely fashion, causing Plaintiffs "to wait 20-30 minutes before [their] food is ready." (<u>Id.</u> at 16). Plaintiffs allege that this has happened "on average two times a week." (<u>Id.</u>).

Even assuming solely for the sake of argument that all of the foregoing allegations regarding vegan meals are true and construing them in Plaintiffs' favor, Plaintiffs have not plausibly alleged that that they have been denied a reasonable opportunity to exercise their religious beliefs as related to vegan food. Instead, Plaintiffs are only alleging that there have been isolated incidents where the service of vegan food has been delayed and that the vegan food lacks their personally preferred level of variety. However, courts have consistently held that isolated incidents of improper service of food do not constitute a substantial burden on the ability to practice

religion. Strope, 381 F. App'x at 881–82 (providing that sporadic incidents "in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable."); Davis v. Doe, No. 1:14-cv-373, 2014 WL 1835853, at *2 (M.D.N.C. May 8, 2014) ("[S]ingle or isolated incidents do not place a substantial burden on an inmate's exercise of religion."). Accordingly, none of the allegations made by Plaintiffs regarding vegan food supports their claim that their religious practices have been substantially burdened under Article 1, Section 16 of the Minnesota Constitution.

Therefore, the Court recommends dismissing without prejudice all of Plaintiffs' claims to the extent they argue that Defendants' vegan food policies violate Article 1, Section 16 of the Minnesota Constitution.

### 3. Plaintiffs' Federal Constitutional Claims

Plaintiffs bring other claims under 42 U.S.C. § 1983. (Compl., [Docket No. 1], at 22). To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege a] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct

responsibility for, a deprivation of his constitutional rights."). In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Id.

### i.    First Amendment Claim[4]

Plaintiffs assert a federal constitutional claim against Defendants for violation of their freedom of religious exercise under the First Amendment. (Compl., [Docket No. 1], at 17). Defendants argue that Plaintiffs' First Amendment claim must necessarily fail because: (1) Plaintiffs fail to plead facts that supports their contention that the MSOP's kosher or vegan meal service is inadequate to sustain them in good health; (2) Plaintiffs have no right to kosher or vegan food that is of a particular variety or that satisfies Plaintiffs' tastes; and (3) Plaintiffs allege only isolated incidents of non-kosher or non-vegan food being served, which cannot constitute a substantial burden. (Defs.' Mem. in Supp., [Docket No. 20], at 9).

"To successfully plead a violation of the First Amendment's freedom of exercise [clause], [Plaintiffs] must plead facts sufficient to demonstrate that Defendants placed a substantial burden on [their] ability to practice [their] religion." Daywitt v. Minnesota, No. 14-cv-4526 (MJD/LIB), 2015 WL 4094199, at *8 (D. Minn. July 6, 2015); See also, Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997) ("As an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief."). In order to substantially burden the free exercise of religion, a

> governmental action must significantly inhibit or constrain conduct or expression
> that manifests some central tenet of a [person's] individual [religious] beliefs; must
> meaningfully curtail a [person's] ability to express adherence to his or her faith; or
> must deny a [person] reasonable opportunities to engage in those activities that are
> fundamental to a [person's] religion.

---

[4] Defendants do not dispute that Plaintiffs sufficiently alleged that Defendants were directly and personally involved in Plaintiffs' alleged constitutional violation.

Id. (alterations in original) (internal quotation marks omitted). Once a person demonstrates that their sincerely held religious beliefs have been substantially burdened, and does so in the context of civil commitment, courts in this district have historically applied a modified version of the multi-factor test announced in Turner v. Safely, 482 U.S. 78, 89–91 (1987). See, Daywitt, 2015 WL 4094199, at *8. In doing so, the court "'considers . . . [a] Plaintiff['s] First Amendment claims in light of appropriate therapeutic interests as well as relevant safety and security concerns.'" Id. (quoting Karsjens v. Jesson, 6 F. Supp. 3d 916, 937 (D. Minn. 2014)).

To the extent that Plaintiffs argue that the lack of variety of kosher and vegan food constitutes a substantial burden on their ability to practice their religion, Plaintiffs' argument is unpersuasive.

In Slater v. Teague, 2018 WL 1800919, at *6 (D. Colo. Mar. 21, 2018), the plaintiff argued that the lack of variety of kosher meals available to him violated his First Amendment rights. Specifically, the plaintiff complained that there were only seven different kosher meals available to him. Id. at *2. The Court, however, found that the plaintiff's alleged facts did not amount to a substantial burden under the First Amendment and thus dismissed the plaintiff's First Amendment claim. Id. at *6.

Plaintiffs in the present case similarly allege that their right to freely exercise their religion is substantially burdened by their perceived lack of variety of kosher and vegan food options. Their argument, however, does not support a free exercise claim under the First Amendment and should therefore be dismissed. See, Strope v. Cummings, 381 F. App'x 878, 881 (10th Cir. 2010) (finding that plaintiff's allegations, including that kosher meals had less variety than regular meals, lacked seasonal fruits and vegetables, and occasionally included "wilted or even rotten items," "reflect[ed] the inconvenience of non-preferred or occasionally unsatisfactory items in a meal,"

but did not "constitute[ ] a substantial burden on [plaintiff's] practice of maintaining a kosher diet").

To the extent that Plaintiffs allege that the Moose Lake Facility has failed on occasion to properly serve kosher and vegan meals, the Courts also finds that these factual allegations do not constitute a substantial burden on Plaintiffs' free exercise of religion. Plaintiffs allege that they have recently had to wait an additional 20 to 30 minutes for the "past few weeks" for the vegan meals to be prepared. (Compl., [Docket No. 1], at 16). Plaintiffs also allege that kosher food has on occasion been contaminated in the past due to contact with non-kosher foods. (Id. at 15).

Courts have consistently held that isolated incidents of a facility failing to serve food properly does not constitute a substantial burden on a person's religious practice. See, Rapier v. Harris, 172 F.3d 999 (7th Cir. 1999) (failure to provide religious meal on three occasions not a substantial burden); Brown v. Graham, 470 F. App'x. 11, 15 (2d Cir. 2012) (affirming decision that failure to provide a kosher meal on one occasion did not rise to the level of a substantial burden on an inmate's religion); Strope, 381 F. App'x at 881–82 (sporadic incidents "in which a prisoner's meal was rendered inedible by service of [other] prohibited items contaminating his tray was not actionable."); Randall v. McLeod, 68 F.3d 470 (5th Cir. 1995) (no constitutional violation when inmate denied pork-free meals on two occasions); Brown v. Graham, 470 F. App'x. 11 (2nd Cir. 2012) (holding that failure to provide kosher meal on one occasion was not a substantial burden).

Here, Plaintiffs only allege that Defendants have occasionally contaminated the kosher and vegan food and allege that there have been only some instances of minor delays in receiving the vegan meals. As explained above, occasional failures to provide proper kosher and vegan meals do not constitute a substantial burden. Accordingly, Plaintiffs' argument in this regard does not support a free exercise claim under the First Amendment and should therefore be dismissed. See,

e.g., Davis, 2014 WL 1835853, at *2 ("[S]ingle or isolated incidents do not place a substantial burden on an inmate's exercise of religion.").

Lastly, Plaintiffs allege that their exercise of religion is substantially burdened because the kosher meals contain a maximum of between 1700-1800 calories daily, which is below the caloric levels necessary to sustain them. (Compl., [Docket No. 1], at 13).

With regard to Plaintiffs' allegation that the daily calories of the kosher meals provided at the Moose Lake Facility are inadequate, Defendants argue that Plaintiffs' Complaint "contains no facts substantiating that MSOP's kosher meal service, in itself, is insufficient to sustain [Plaintiffs] in good health." (Defs.' Mem. in Supp., [Docket No. 20], at 10). Additionally, Defendants argue that even if Plaintiffs have shown that the kosher meals are calorically deficient, Plaintiffs have not alleged that they cannot obtain additional kosher food through alternative means. (Id. at 10–11). Defendants' argument here is not persuasive.

To support their argument, Defendants cite to Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008). In Patel, the plaintiff, a Muslim inmate, was given the option to self-select a vegetarian diet from the prison's hot bar. Id. at 814. He was also given the option to supplement his halal meals with food from the salad bar. Id. Lastly, the plaintiff was provided the option to purchase halal food from the commissary when he believed the halal entrees were inadequate. Id. at 814–15. The Court found that given all these alternative options, and because plaintiff could afford to purchase halal food from the commissary, plaintiff could not show that this alternative means to supplement his diet was inadequate. Id.

The present case is distinguishable. First, Defendants do not represent any specific alternatives that are available to Plaintiffs and there is nothing in the record to suggest as much. Despite Defendants' arguments, Patel does not stand for the proposition that the burden is on

Plaintiffs to show that they have exhausted other potential alternatives. Rather, in Patel the record showed that Defendant had demonstrated that the plaintiff had alternative means to obtain halal food items and the plaintiff refused to take advantage of those alternatives. No such showing has been made here.

Instead, the Court here finds that Plaintiffs have sufficiently plead facts regarding the lack of adequate caloric levels for kosher food sufficient to sustain them that would make plausible their claim that their religious exercise of sincerely held beliefs is being substantially burdened. Specifically, Plaintiffs allege that those receiving kosher meals only receive between 1700 and 1800 calories daily. (Compl., [Docket No. 1], at 13). Plaintiffs compare this to clients who receive non-kosher meals, who they allege receive anywhere between 2600 and 3000 calories daily. (Id.). Additionally, to show that the number of calories Plaintiffs are receiving on a daily basis are insufficient, Plaintiffs' refer to the recommendations of the National Research Council, which states that an adult male that is moderately active should receive a minimum of between 2200 and 2400 calories a day to maintain a healthy diet. (Id.). Plaintiffs further underscore their claim that the number of calories available to them through kosher meals is insufficient by alleging that Plaintiff Daywitt, as well as, approximately six other clients at the Moose Lake Facility, have been compelled to eat non-kosher meals due to the insufficient number of calories in consuming only the kosher meals. (Id. at 14–15).

Assuming these factual allegations are true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that, with regard to kosher food, Plaintiffs have sufficiently pled facts demonstrating a substantial burden on their sincerely held religious belief because the variance between the calories Plaintiffs are allegedly currently receiving if they remain kosher and

what is recommended is substantial enough to warrant resolution on the merits. See, Weir, 114 F.3d at 820.

With regard to vegan food, however, Plaintiffs have failed to sufficiently plead facts demonstrating a substantial burden on their sincerely held religious beliefs. In their Complaint, Plaintiffs allege simply that there is a "lack of variety" with regard to the vegan meals provided. (Compl., [Docket No. 1], at 14). Plaintiffs also allege that the vegan food in prison was "better" than the vegan food at the MSOP Moose Lake facility. (Id. at 15). Lastly, Plaintiffs allege that "for the past few weeks [they have] had issues with the kitchen not preparing [their] meals" in a timely fashion, causing Plaintiffs "to wait 20-30 minutes before [their] food is ready." (Id. at 16). Plaintiffs allege that this has happened "on average two times a week." (Id.).

Even assuming all of the foregoing allegations regarding vegan meals are true and construing them in Plaintiffs' favor, Plaintiffs have not plausibly alleged that that they have been denied a reasonable opportunity to exercise their religious beliefs as related to vegan food. Instead, Plaintiffs are only alleging that there have been isolated incidents where the service of vegan food has been improper and that the vegan food lacks their personally preferred level of variety. As previously discussed, however, neither of these allegations support a claim under the First Amendment as a matter of law. Strope, 381 F. App'x at 881–82 (sporadic incidents "in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable"); Davis, 2014 WL 1835853, at *2 ("[I]solated incidents do not place a substantial burden on an inmate's exercise of religion."); Slater, 2018 WL 1800919, at *6 (holding that a lack of variety of kosher meals did not amount to a substantial burden).

Accordingly, to the extent that Plaintiffs argue that their First Amendment rights are being violated as they relate to vegan food, Plaintiffs' claim should be dismissed without prejudice.

ii.    **Fourteenth Amendment Claim**

Plaintiffs allege that Defendants have violated their substantive due process rights under the Fourteenth Amendment. (Compl., [Docket No. 1], at 18).

Defendants first argue that Plaintiffs' substantive due process claim is improper because the United States Supreme Court has held that "'[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" (Defs.' Mem. in Supp., [Docket No. 20], at 13) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998)). This Court agrees with Defendants.

The United States Supreme Court has stated that substantive due process analysis is inappropriate in a case if the claim therein is "covered by" another Amendment. Lewis, 523 U.S. at 843. Here, Plaintiffs claim that Defendants have violated their religious rights by failing to provide them with food that properly conforms to their religious practices which they claim is a burden on the free exercise and practice of their religions, in violation of the First Amendment of the United States Constitution. (Compl., [Docket No. 1], at 17–21). This is clearly an argument that is covered by another Amendment, and therefore under Lewis, it should not also be pursued as a substantive due process claim under the Fourteenth Amendment.

Accordingly, this Court recommends dismissing with prejudice Plaintiffs' substantive due process claims under the Fourteenth Amendment.[5]

---

[5] Even if this Court were to assume solely for the sake of argument that Lewis did not prohibit the consideration of Plaintiffs' substantive due process claim, the Court would find that Plaintiffs have failed to sufficiently plead facts to allege a plausible claim that their substantive due process rights were violated. "To establish a substantive due process violation, the [claimant] must demonstrate that a fundamental right was violated and that [the defendants'] conduct shocks the conscience." Folkerts v. City of Waverly, Ia., 707 F.3d 975, 980 (8th Cir. 2013). "Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise." Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012) (citation omitted.). Defendants' alleged conduct—not providing an adequate caloric quantity of food or providing Plaintiffs with more variety—in the present case is more analogous to cases in which courts have found that the conduct did not shock the conscience. See, Favors, 2014 WL 4954687, at *21 (D.

### iii.    RLUIPA

Defendants argue that Plaintiffs' RLUIPA (42 U.S.C. § 2000cc-1) claim must be dismissed because Plaintiffs have failed to allege facts related to either requisite threshold requirement for the application of RLUIPA. (Defs.' Mem. in Supp., [Docket No. 20], at 7). RLUIPA provides:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
>> (1) is in furtherance of a compelling governmental interest; and
>>
>> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). This provision only applies, however, when "the substantial burden is imposed in a program or activity that receives Federal financial assistance" or when "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." Id. § 2000cc–1(b) (addressing "[s]cope of application" of RLUIPA).

To present a facially plausible claim that RLUIPA is applicable, a complaint must allege facts to support the conclusion that the substantial burden on their religious exercise was "imposed in a program or activity that receives Federal financial assistance," or that "the substantial burden would affect commerce with foreign nations, among the several States, or with Indian tribes." See, 42 U.S.C. § 2000cc-1(b). In the present case, Plaintiffs have alleged no facts to support either

---

Minn. Sept. 30, 2014) (finding the "deprivation of participation in a vocational work program while civilly committed for sex offender treatment is not a deprivation that 'shocks the conscience'"). Accordingly, even if this Court were to reach the question of whether Plaintiffs have adequately pled a substantive due process claim, this Court would still recommend dismissing Plaintiffs' substantive due process claim for failure to plausibly allege conduct that shocks the conscience.

predicate in their Complaint. Plaintiffs have, therefore, failed to plausibly allege sufficient facts to state a claim upon which relief under RLUIPA can be granted. Gutman v. Wriggelsworth, No. 1:09–cv–628, 2010 WL 1814816, at *4 (W.D. Mich. Feb. 4, 2010) (dismissing RLUIPA claim in context of defendants' Rule 12(b)(6) motion because plaintiff did "not allege[ ] that [d]efendants receive federal funding or that the substantial burden he suffered affected (or would have affected) 'commerce with foreign nations, among the several States, or with Indian tribes'") (quoting § 2000cc–1(b)); See also, Murray v. Kansas Dep't of Corr., No. 07–3276, 2009 WL 1617664, at *3 (D. Kan. June 9, 2009) ("Plaintiff cannot invoke RLUIPA because he has not alleged that [the Kansas Department of Corrections] received federal funding nor has Plaintiff alleged that he experienced a substantial burden that would affect interstate or foreign commerce. Accordingly, as pleaded in Plaintiff's Amended Complaint, this Court finds that RLUIPA does not apply to this case, and therefore, dismisses Plaintiff's cause of action for failure to state a RLUIPA claim."); Ephraim v. Angelone, 313 F. Supp. 2d 569, 575 (E.D. Va. 2003) ("Plaintiff has not alleged sufficient facts to properly invoke the statute. The statute explicitly requires that [the] substantial burden complained of be imposed in a program or activity that receives federal financial assistance or that the alleged burden affect interstate or foreign commerce. Thus, the general rule in subsection (a) does not become applicable until the threshold of subsection (b) has been met." (citation omitted)).

Therefore, the Court recommends that the Plaintiffs' RLUIPA claims be dismissed without prejudice.

### iv.   Equal Protection Claim

Defendants contend that Plaintiffs have failed to plead an actionable equal protection claim. (Defs.' Mem. in Supp., [Docket No. 20], at 14). The Court agrees.

To state an actionable equal protection claim, a complainant must allege a set of facts showing that the named defendants treated the complainant differently from other similarly situated individuals, based on some prohibited form of discrimination. See, Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) ("In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'"); Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, a plaintiff must show that he belongs to a group that has been treated less favorably than others who are "similarly situated"), cert. denied, 513 U.S. 1185 (1995).

Purposeful discrimination requires more than "intent as volition or intent as awareness of consequences." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). Rather, a decisionmaker must undertake a course of action "'because of, not merely in spite of,' [the action's] adverse effect upon an identifiable group." Id. Thus, to plead a claim for discrimination based on membership in a protected class requires a demonstration of "sufficient factual matter to show that [defendants] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of race, religion or national origin." Iqbal, 556 U.S. at 678.

To state a claim upon which relief may be granted, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Here, Plaintiffs have not alleged any facts showing that they were treated differently from other inmates because they belonged to a protected class. Divers v. Dep't of Corr., 921 F.2d 191,

193 (8th Cir. 1990) (per curiam) (finding that plaintiff must show he received treatment "invidiously dissimilar to that received by other inmates"). In Plaintiffs' memorandum in response to Defendants' motion to dismiss, they argue that they have a right to have a similar variety of foods as non-kosher and non-vegan clients of the MSOP. (Plfs.' Opp., [Docket No. 28], at 18). While Plaintiffs identify that they are similarly situated as civilly committed persons receiving regular meals, in their Complaint, Plaintiffs only complain that their efforts to receive a greater variety of kosher and vegan meals and their efforts to address issues related to the service of kosher and vegan meals have been unsuccessful. Plaintiffs do <u>not</u>, however, allege that the difference in variety, caloric quantity, or timely service of kosher or vegan meals is attributable to discriminatory motives by Defendants. <u>Aldaco v. Holder</u>, No. 10-cv-590 (JRT/LIB), 2011 WL 825624, at *10 (D. Minn. Jan. 7, 2011) (finding that the plaintiff's equal protection claim necessarily fails because he did not allege facts sufficient to plausibly suggest the defendants discriminatory state of mind).

Therefore, even reading the Complaint as a whole, taking all factual allegations pled therein as true, considering them in the light most favorable to Plaintiffs, and drawing all reasonable inferences in Plaintiffs' favor, they have failed to make sufficient factual allegations of discriminatory animus or motives for the alleged behavior to support a plausible claim that Defendants violated Plaintiffs' equal protection rights, such as is necessary to support a claim under 42 U.S.C. § 1983. <u>See</u>, <u>Aldaco</u>, 2011 WL 825624, at *10 (D. Minn. Jan. 7, 2011).

As such, the Court recommends that Plaintiffs' Equal Protection Claim be dismissed without prejudice.

### 4. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity with regard to Plaintiffs' claims brought against them in their individual capacities and pursuant to § 1983. (Defs.' Mem. in Supp., [Docket No. 20], at 18).

The Supreme Court has explained that—

> The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'

Pearson v. Callahan, 555 U.S. 223, 230 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Supreme Court has approved a two-step process for resolving qualified immunity claims:

> "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right . . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."

Pearson, 555 U.S. at 230 (citations omitted).

Here, the Court has found that Plaintiffs' Complaint does plausibly allege a violation of their First Amendment Constitutional rights so far as it relates to the caloric quantity of kosher food being served at the MSOP Moose Lake Facility. As discussed above, Plaintiffs allege that Defendants substantially burdened their right to practice their religion in violation of the First Amendment by depriving them of sufficient amounts of kosher foods to sustain themselves consistent with the tenets their religion. That right to exercise one's religion free of substantial burdens thereon in the absence of a compelling state interest has long been clearly established.

Since it has been plausibly alleged that Defendants provided meals to Plaintiffs deficient in the caloric quantity of the kosher foods, and since it is well-established that it can be a violation of clear constitutional rights to substantially burden the free exercise of religion, then based on the

Complaint alone, as is required for a Rule 12(b)(6) motion, it cannot be determined at this time that Defendants did not violate Plaintiffs' religious practices. Therefore, the Court cannot presently conclude that Defendants are entitled to qualified immunity.[6]

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 18], be **GRANTED in part and DENIED in part**;

2. Plaintiffs' federal law claims for monetary damages, whether punitive or compensatory, against Defendants in their official capacities be **DISMISSED with prejudice**;

3. Plaintiffs' state law claims for monetary damages, whether punitive or compensatory, against Defendants in their official capacities be **DISMISSED with prejudice**;

4. Plaintiffs' claims under Minnesota Rule 4665.2900 against Defendants in their individual and official capacities be **DISMISSED with prejudice**;

5. Plaintiffs' claim under Article 1, Section 2 of the Minnesota Constitution be **DISMISSED with prejudice**;

6. All of Plaintiffs' claims under Article 1, Section 16 of the Minnesota Constitution related to vegan food be **DISMISSED without prejudice**;

---

[6] It also is worth noting that even if Defendants were entitled to qualified immunity, Plaintiff's lawsuit against them could still continue in some capacity, because qualified immunity applies only to claims for money damages. Qualified immunity does not preclude civil rights claims for prospective relief—i.e., injunctions or declaratory judgments. Grantham v. Trickey, 21 F.3d 289, 295 (8th Cir. 1994) ("[t]here is no dispute that qualified immunity does not apply to claims for equitable relief"); Bradford v. Missouri Dept. of Corrections, 46 Fed. App'x 857, 858 (8th Cir. 2002) (unpublished opinion) ("qualified immunity does not shield officials from equitable relief").

7. Plaintiffs' § 1983 claims as alleged against Defendants in their official capacities based on the First Amendment as they relate to vegan food be **DISMISSED without prejudice**;

8. Plaintiffs' § 1983 claim as alleged against Defendants in their official capacities based on the First Amendment as it relates to the variety of kosher food be **DISMISSED without prejudice**;

9. Plaintiffs' § 1983 claim as alleged against Defendants in their individual and official capacities based on the Fourteenth Amendment be **DISMISSED with prejudice**;

10. Plaintiffs' § 1983 claim as alleged against Defendants in their individual and official capacities based on the Equal Protection Clause be **DISMISSED without prejudice**;

11. Defendants' Motion to Dismiss, [Docket No. 18], be **DENIED** with respect to Plaintiffs' claim that the daily number of calories of kosher food violates their rights under Article 1, Section 16 of the Minnesota Constitution against Defendants in their individual capacities to the extent Plaintiffs seek injunctive relief; and

12. Defendants' Motion to Dismiss, [Docket No. 18], be **DENIED** with respect to Plaintiffs' § 1983 claim as alleged against Defendants in their official capacities based on the First Amendment only as it relates to the daily number of calories of kosher food, and only to the extent Plaintiffs seek injunctive relief.


Dated: June 5, 2019                                        s/Leo I. Brisbois
                                                           The Honorable Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).