UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Kenneth Daywitt,

                Plaintiff,

    v.

Kevin Moser et al.,

                Defendants.

Case No. 17-cv-1720 (WMW/LIB)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION TO
SUPPLEMENT THE RECORD**

---

This matter is before the Court on Defendants' motion for summary judgment and Plaintiff Kenneth Daywitt's motion to supplement the record. (Dkts. 80, 111.) For the reasons addressed below, Defendants' motion for summary judgment is granted and Daywitt's motion to supplement the record is denied.

## BACKGROUND

Daywitt, who is civilly committed to the Minnesota Sex Offender Program (MSOP), practices Judaism and adheres to the dictates of his faith, including eating kosher food. Defendants are the director, program manager, kitchen supervisor, chief cook, and registered dietician at MSOP.

Daywitt commenced this civil-rights action against Defendants in their official and individual capacities. The complaint alleges (1) denial of nutritionally adequate foods in violation of the United States Constitution, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Minnesota Constitution; (2) deprivation of nutritionally adequate kosher food or vegan foods in violation of the United States Constitution,

RLUIPA, and the Minnesota Constitution; and (3) inhumane treatment in violation of the United States Constitution and the Minnesota Constitution. Daywitt seeks declaratory and injunctive relief and monetary damages for Defendants' alleged violations of Daywitt's constitutional and statutory rights. The Court previously granted in part Defendants' motion to dismiss. The remaining claims allege that Defendants provide calorically deficient kosher meals in violation of the First Amendment to the United States Constitution and Article 1, Section 16, of the Minnesota Constitution.

Defendants move for summary judgment. Daywitt moves to supplement the record. The Court addresses the motion to supplement the record first because that motion impacts what evidence may be considered when deciding the motion for summary judgment.

## ANALYSIS

### I.      Motion to Supplement the Record

In his motion to supplement the record, Daywitt seeks to extend the fact-discovery deadline in the scheduling order to permit Daywitt to rely on a November 24, 2020 declaration.[1] Defendants oppose the request.

Federal Rule of Civil Procedure Rule 16 and Local Rule 16.2(d) govern scheduling orders. Pursuant to these rules, the magistrate judge established July 15, 2020, as the fact-discovery deadline. A formal motion and a showing of good cause are required to obtain an untimely modification of a scheduling order. *See* Fed. R. Civ. P. 16(b)(4);

---

[1]      The parties request an order sealing the document filed at docket number 97-8. As this request has been addressed by the magistrate judge, it is now moot.

LR 7.1(b), 16.3; *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (holding that a district court may properly require a party filing an untimely motion to amend to show good cause); *see also Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1006 (D. Minn. 2013) (describing good cause standard as "exacting").

Daywitt seeks to supplement the factual record with a declaration that calls into question whether products marketed as kosher in the Walkenhorst catalogue, a mail-order catalogue that MSOP clients are permitted to order from during the holiday season, are actually kosher.  As an initial matter, Daywitt has not established how this proposed supplemental evidence is *relevant* to the remaining claims in this case.  *See* Fed. R. Evid. 401, 402 (evidence is relevant if it has any tendency to make a fact of consequence more or less probable and only relevant evidence is admissible); *see also Duluth News-Trib. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 2001) ("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence.").  The claims that remain in this matter pertain to whether MSOP's kosher meal plan is calorically deficient, not whether supplemental holiday food outside of the meal plan is kosher.  *See Target Corp.*, 960 F. Supp. 2d at 1007 (denying motion to amend scheduling order in effort to revive dismissed claims).  Moreover, Daywitt does not address the exacting good-cause standard or whether it is satisfied here.  *See id.* at 1006; Fed. R. Civ. P. 16(b)(4); LR 7.1(b), 16.3.

Therefore, Daywitt's motion to supplement the record is denied.

## II.     Defendants' Motion for Summary Judgment

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a motion for summary judgment, the opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

Daywitt's remaining claims allege that MSOP provides calorically deficient kosher meals to its clients, in contravention of the First Amendment to the United States Constitution and Article 1, Section 16, of the Minnesota Constitution.  Daywitt's claims are addressed in turn.

### A.     First Amendment to the United States Constitution

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.  To prove a violation of the Free Exercise Clause, Daywitt must establish that the governmental activity at issue places a substantial burden on his religious practice.  *Patel v. U.S. Bureau of Prisons*,

515 F.3d 807, 813 (8th Cir. 2008) (citing *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997)). Free exercise of religion is substantially burdened when a regulation "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenant of a person's individual religious beliefs; . . . meaningfully curtail[s] a person's ability to express adherence to his or her faith; or [denies] a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." *United States v. Ali*, 682 F.3d 705, 709–10 (8th Cir. 2012).

Numerous federal courts have recognized that following a diet with religiously based restrictions is a constitutionally protected right under the First Amendment. *See Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000); *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999); *see also LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991). A plaintiff may invoke First Amendment protection if the plaintiff's religious beliefs are sincerely held. *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 833 (1989); *United States v. Seeger*, 380 U.S. 163, 185 (1965). Prisoners retain some constitutional rights, *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), and civilly committed persons, such as Daywitt, are entitled to "more considerate treatment and conditions of confinement" than prison inmates, *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (internal quotation marks omitted).

Defendants do not dispute that Daywitt holds a sincere belief that he must maintain a kosher diet as part of his practice of the Jewish faith, and Daywitt's deposition testimony supports this fact. The parties dispute whether MSOP, as a civil-commitment institution, is required to provide meals that sustain confined individuals in "good health" and satisfy

the religious dietary laws of the confined individuals under the same standards as a prison, *see Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003), or whether MSOP is subject to a higher standard than prisons in this context, *see Senty-Haugen*, 462 F.3d at 886.  Therefore, the issue before the Court is as follows: to establish a substantial burden on free exercise rights, whether Daywitt must show that he is not in good health because of MSOP's kosher meals or whether Daywitt must only show that MSOP's kosher meals are calorically insufficient.  As there is no evidence in the record that MSOP's kosher meal offerings were insufficient to keep Daywitt in good health,[2] the Court assumes without deciding that, in the context of meal nutrition, civil-commitment institutions are subject to a higher standard than prisons, and that a demonstration of caloric insufficiency, without any negative health effects, is sufficient to establish a free-exercise violation.  With that operative assumption, the Court considers whether there is a genuine dispute of material fact as to whether MSOP's kosher meal offerings are calorically insufficient such that Daywitt's free-exercise rights are substantially burdened.

Defendants contend that Daywitt fails to provide evidence to substantiate his allegations that MSOP's kosher meal offerings are calorically deficient.  Specifically, Defendants maintain that the unrebutted record in this case demonstrates that MSOP's

---

[2]     Daywitt testified that he feels hungry after eating MSOP's kosher meals.  There is no evidence, however, that Daywitt has experienced any negative health effects arising from these feelings of hunger.

kosher menu provides 2,500 to 2,800 calories per day.[3]  Daywitt argues that his deposition testimony and the declarations of Roy Hughes and Dennis White, two other MSOP clients, prove that there is a numerical disparity in the calories of the non-kosher meals and the calories of the kosher shelf-stable entrees.

Daywitt relies on his deposition testimony to establish that the "highest calorie intake on one of those [prepackaged kosher meals], if I remember correctly, was 380 calories."  And the declarations of Hughes and White echo Daywitt's contention that the shelf-stable kosher entrees that MSOP provides are calorically low.  For example, Hughes attests that the kosher shelf-stable entrees are "of insufficient size for a grown adult causing me to feel hungry soon after eating them" and that the "weekly caloric content of the Kosher meals is roughly 10% of the regular daily meals served to [the] general population."  And White attests that "the kosher [meals] provided by MSOP are inadequate in [caloric] intakes of less than 400 calories for each different shelf stable meal."

Other than the foregoing vague, speculative and unsubstantiated testimony and declarations, Daywitt fails to provide any specific evidence as to either the daily or the weekly average calories that MSOP provides to kosher clients.  *See generally Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (observing that "a properly supported motion for summary judgment is not defeated by self-serving affidavits").  In contrast, MSOP's evidence reflects that MSOP's kosher meal plan typically provides between 2,500 to 2,800

---

[3]     Daywitt testified in his deposition that he believed that he should receive 2,400 to 2,600 calories daily.  MSOP's dietitian attests that clients who require a kosher meal never average fewer than 2,400 calories daily in a given week.

calories daily and the "regular" (non-kosher) meal plan typically provides between 2,600 to 3,000 calories daily.  Daywitt also acknowledges in his deposition that MSOP provides food for its clients who require a kosher meal in addition to the prepackaged kosher shelf-stable entree.[4]  Therefore, although the record supports Daywitt's contention that MSOP's clients who require a kosher meal receive fewer average daily calories than those who do not, the record does *not* support the conclusion that MSOP's kosher meal plans are calorically *deficient*.   Because Daywitt relies only on vague, speculative and unsubstantiated testimony and declarations to establish the caloric content of MSOP's shelf-stable kosher entrees and he fails to provide evidence to dispute the *average daily* or *average weekly* caloric content of the meals that MSOP's clients who require a kosher meal receive, a reasonable jury could not return a verdict for Daywitt that the kosher meal plan at MSOP is calorically deficient.  *See Anderson*, 477 U.S. at 248.

Therefore, Defendants' motion for summary judgment as to Daywitt's remaining First Amendment claims is granted.

### B.    Article 1, Section 16 of the Minnesota Constitution

Daywitt's remaining claims also include alleged violations of Article 1, Section 16, of the Minnesota Constitution.  Although Defendants move for summary judgment, neither party addresses how Daywitt's free-exercise rights as protected by the Minnesota

---

[4]    Daywitt disputes whether food other than the prepackaged kosher shelf-stable entrees are actually kosher.  But this argument is merely speculative.  For example, in his testimony, Daywitt admitted that he did not know whether the vegetables added to the kosher meals were prepared consistent with kosher protocols.

Constitution materially differ from Daywitt's free-exercise rights as protected by the United States Constitution.

The Minnesota Constitution "afford[s] greater protection for religious liberties against governmental action than" the First Amendment. *Hill-Murray Fed'n of Tchrs. v. Hill-Murray High Sch.*, 487 N.W.2d 857, 865 (Minn. 1992). When analyzing a free-exercise claim under the Minnesota Constitution, courts consider four factors: "whether the objector's belief is sincerely held; whether the state regulation burdens the exercise of religious beliefs; whether the state interest in the regulation is overriding or compelling; and whether the state regulation uses the least restrictive means." *Id.* at 865. Under the second factor—whether the state regulation burdens the exercise of religious beliefs—the burden rests on the parties challenging the regulation to establish that the provision at issue infringes their religious autonomy or requires conduct inconsistent with their religious beliefs. *Edina Cmty. Lutheran Church v. State*, 745 N.W.2d 194, 204 (Minn. Ct. App. 2008). To demonstrate such a burden, a plaintiff "must establish that the risk of interference with religious beliefs or practice is real and not 'remote.'" *Id*. (quoting *Hill-Murray*, 487 N.W.2d at 866).

As Daywitt has proven a sincere belief in Judaism, the sole issue is whether the caloric content of MSOP's kosher meals is insufficient such that Daywitt's exercise of his religious beliefs is burdened. But, as addressed above, Daywitt does not identify any evidence in the record demonstrating that the caloric value of MSOP's kosher meals infringes on his religious autonomy or requires any conduct that is inconsistent with his

religious beliefs in a real, non-remote way. *See id.* Therefore, Defendants' motion for summary judgment is granted as to Daywitt's claim arising under Article 1, Section 16, of the Minnesota Constitution.[5]

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff Kenneth Daywitt's motion to supplement the record, (Dkt. 111), is **DENIED**.

2.     Defendants' motion for summary judgment, (Dkt. 80), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  September 2, 2021                           s/Wilhelmina M. Wright
                                                    Wilhelmina M. Wright
                                                    United States District Judge

---

[5]     In light of this conclusion, the Court need not address whether Defendants are entitled to qualified immunity.